UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TARLOK SINGH,

            Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC,
and BANK OF AMERICA, N.A.,

            Defendants.

**MEMORANDUM & ORDER**
25-CV-01317 (HG)

---

**HECTOR GONZALEZ**, United States District Judge:

The Court has reviewed the parties' positions on whether this case should be remanded due to Plaintiff's lack of standing under Article III of the U.S. Constitution. For the reasons below, the Court concludes that Plaintiff lacks such standing. As such, this action does not come within the Court's limited subject-matter jurisdiction and must be remanded to state court.

## BACKGROUND

Defendant Equifax removed this case to this Court on March 7, 2025. *See* ECF No. 1. After reviewing the Complaint filed in state court, the Court issued the following Order:

> ORDER TO SHOW CAUSE: Defendant [Equifax] has removed this case, stating that this Court has subject-matter jurisdiction because Plaintiff brings claims under the Fair Credit Reporting Act ("FCRA"), implicating federal-question jurisdiction under 28 U.S.C. § 1331. *See* ECF No. 1 at para. 3. However, this Court appears to lack subject-matter jurisdiction because Plaintiff lacks standing under Article III of the United States Constitution.
>
> By now, it is well established that "a bare procedural violation," including of the FCRA, "divorced from any concrete harm," fails to "satisfy the injury-in-fact requirement of Article III." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021). According to the Complaint filed in state court, Plaintiff, relying on boilerplate language familiar to this Court, alleges that "[t]he incorrect payment remarks on Plaintiff's credit report and erroneous reporting are not only misleading but also frustrating, as they adversely affect Plaintiff's creditworthiness"; "damage including loss and reduction of credit, increased debt, and higher interest rates and unfavorable terms

on any available credit recovery, and other actual damages"; and "payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and other actual damages." *See* ECF No. [1-1] at paras. 16, 34, 43, 50, 55, 66, 74, 83, 92.  But "[w]ithout more, these conclusory allegations are insufficient" because they "fail to show how [Defendants'] alleged error caused [P]laintiff to suffer a concrete and particularized harm." *See Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (quotation omitted) (finding lack of Article III standing where the plaintiff alleged "'injury to his credit worthiness,' 'increased difficulty obtaining credit,' and 'embarrassment, humiliation, and other emotional injuries'").  And courts in this Circuit routinely reach the same conclusion when faced with similar allegations of injury.  *See, e.g.*, *Zlotnick v. Equifax Info. Sols., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (plaintiff alleged "loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial"); *Hakobyan v. Experian Info. Sols., Inc.*, No. 23-cv-1532, 2024 WL 1468170, at *1 (E.D.N.Y. Apr. 4, 2024) ("perfunctory allegation of emotional distress" insufficient to confer Article III standing); *Giannelli v. Network Recovery Servs., Inc.*, No. 25-cv-00181, Mar. 4, 2025, Text Order (E.D.N.Y.) (plaintiff alleged that "she felt compelled to pay the $50.000 fee for a comprehensive review to confirm that her credit standing had not been undermined").

When a defendant removes a case from state court but the federal court lacks subject-matter jurisdiction due to the absence of Article III standing, remand is required.  *See* 28 U.S.C. § 1447; *Hakobyan*, 2024 WL 1468170, at *2.  Accordingly, on or before March 14, 2025, each party is ordered to show cause, in a letter not to exceed three pages, why this case should not be remanded to state court.

*See* Mar. 7, 2025, Order to Show Cause.  On March 14, 2025, the parties filed their responses.

*See* ECF No. 11 (Plaintiff)[1]; ECF No. 12 (Equifax); ECF No. 13 (Bank of America).

## DISCUSSION

"The removing defendant has the burden of establishing federal jurisdiction." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021).[2]  "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of

---

[1]   Plaintiff does not contest that Equifax complied with the non-jurisdictional procedural requirements for removal.  *See* ECF No. 11 at 2–3.

[2]   From here on, unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.  Citations to ECF refer to the pages assigned by the Electronic Case Files System.

establishing that removal is proper." *United Food & Com. Workers Union, Loc. 919 v. Centermark Props. Merdien Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Here, although the parties agree that Plaintiff has suffered a concrete harm sufficient to confer standing, none of their respective arguments is persuasive.

All three parties claim that there is standing in this case based on a dissemination theory of harm. The principal claim is that "[t]he Complaint specifically states that Equifax prepared and disseminated inaccurate consumer reports on Plaintiff's behalf." ECF No. 12 at 2 (citing ECF No. 1-1 ¶ 50); *see also* ECF No. 11 at 2; ECF No. 13 at 2. Here, the parties pick up on the Supreme Court's holding in *TransUnion* that dissemination of inaccurate information to a third-party can create a cognizable injury. *See TransUnion*, 594 U.S. at 432. However, on this Complaint, the theory fails. To be sure, the Complaint says that "Equifax continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages." ECF No. 1-1 ¶ 50. But that does not plausibly allege actual dissemination, since all it says is that Equifax "produce[d]" credit reports.[3] *See Zlotnick*, 583 F. Supp. 3d at 392 ("Where a plaintiff claims that an improper notation on his credit report resulted in a credit score reduction that could cause him reputational and financial harm, the absence of allegations of dissemination to third parties requires dismissal."). Additionally, the argument

---

[3] Plaintiff appears to dispute this as a factual matter, stating in his letter that "there were several inquiries made by Credit Karma." ECF No. 11 at 2. That is not in the Complaint. And there was nothing connected to Credit Karma "appended" to the Complaint nor his own letter stating as much. *See* ECF No. 1-1. Nor does he allege that Equifax provided a report to Credit Karma. This distinguishes this case from authority provided by Equifax, *Krausz v. Equifax Info. Servs., LLC*, No. 21-cv-7427, 2023 WL 1993886 (S.D.N.Y. Feb. 14, 2023), in which Judge Karas found Article III standing because "Plaintiff . . . alleged actual dissemination to third-party creditors [specifically, Credit Karma] . . . by pointing to the inquiries on Plaintiff's credit report," *id.* at *9; *see also Lamando v. Rocket Mortg.*, No. 23-cv-147, 2024 WL 264034, at *4 (N.D.N.Y. Jan. 24, 2024) (finding allegations of "pulls" on plaintiff's credit report, combined with allegations of denials of new lines of credit, sufficient to establish Article III standing).

misapprehends the precedent. In *TransUnion*, the Supreme Court reasoned that the dissemination of the credit reports—which "labeled the class members as potential terrorists, drug traffickers, or serious criminals"—created an Article III injury because it "b[ore] a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts," or "the reputational harm associated with the tort of defamation." 594 U.S. at 432. Clearly, there is nothing close to that in this case.

Next, Bank of America points to a hodgepodge of alleged harms in Plaintiff's Complaint, like "loss and reduction of credit, increased debt, and higher interest rates" to conclude that he has standing. *See* ECF No. 13 at 2. That argument is insufficiently responsive to the Court's Order to Show Cause, which specifically explained why those generic assertions fail, and the one case it cites in support, *see Escobar v. Midland Credit Mgmt.*, No. 18-cv-819, 2019 WL 3751486 (D. Conn. Aug. 8, 2019), predates the "watershed" *TransUnion* decision, *Rogers v. LVNV Funding, LLC*, No. 21-cv-796, 2022 WL 2292836, at *2 (E.D.N.Y. June 24, 2022).

Plaintiff has two additional arguments, neither of which demonstrates Article III standing. First, he suggests that he needed to pay Credit Karma, a third party, "for the monitoring [of his credit] out of his own pocket." ECF No. 11 at 2. That is also not responsive to the Order to Show Cause. Such voluntary action is insufficient to confer on him Article III standing in the absence of a "concrete present harm[] due to the increased risk" associated with allegedly inaccurate credit reporting. *See Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 287 (2d Cir. 2023). That outcome is consistent with the general principle that a plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416

(2013).[4]  Second, and relatedly, he argues that he experienced actual harm because he "had to suffer for a year and a half to apply for any credit opportunities since he knew that any assessment of his financial standing would be negative for as long as this false information would be reported."  ECF No. 11 at 2.  But that claim, not pled in the Complaint, is textbook speculation.  *See Zlotnick*, 583 F. Supp. 3d at 391 ("Plaintiff's allegations that he suffered a chilling effect on future applications for credit, without more is unavailing because, allegations of *possible* future injury are not sufficient." (emphasis in original)).

## CONCLUSION

For the reasons provided herein, Plaintiff has no Article III standing and this Court lacks subject-matter jurisdiction.[5]  Pursuant to 28 U.S.C. § 1447(c), this case is therefore remanded to the Supreme Court of the State of New York, Queens County.  The Clerk of Court is respectfully directed to mail a copy of this Order to the Clerk of the Queens County Supreme Court (Index No. 703486/2025).

SO ORDERED.

                                                */s/ Hector Gonzalez*
                                                HECTOR GONZALEZ
                                                United States District Judge

Dated: Brooklyn, New York
        March 17, 2025

---

[4]  The fact that Plaintiff now claims to have triggered the pulls on his credit report that underpin his dissemination theory of harm underlines his effort to manufacture standing.

[5]  Bank of America asks this Court to "specifically hold that Plaintiff has *not* alleged an injury in fact and therefore does not have an actual legal stake or concrete interest required to pursue his FCRA claim in either federal or state court."  ECF No. 13 at 3 (emphasis in original).  This Order says what it says, and this federal Court has no authority to tell a state court how to proceed after remand.  *See Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 312 (2d Cir. 2005) ("Section 1447(d) establishes that once a section 1447(c) remand order has been mailed to the state court pursuant to the latter section, federal jurisdiction is at an end.").  Further, the Court cannot comprehend the request to "adopt the reasoning articulated in *In re FDCPA Mailing Vendor Cases*," 551 F. Supp. 3d 57 (E.D.N.Y. 2021), made without further citation.  ECF No. 13 at 2–3.  The Court notes, however, that those cases were not removed.